Filed 12/1/25  P. v. Lopez CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062833 |
| v. | (Super. Ct. No. 08HF1486) |
| NESTOR LOPEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge. Reversed and remanded.

Edward Arthur Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*      \*      \*

Defendant Nestor Lopez pleaded guilty to attempted murder over a decade ago. He later filed a resentencing petition under Penal Code section 1172.6, which the trial court denied.[1] On appeal, his appointed counsel filed a no-issue brief, requesting we exercise our discretion to independently review the record for error under *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). After exercising this discretion, we asked the parties to brief whether Lopez's admissions in his "plea form 'conclusively establishes every element' to sustain a conviction for the crime of attempted murder under current law."

After reviewing Lopez's supplemental brief, we conclude the record does not conclusively show that he had either the requisite intent or committed any act that would support an attempted murder conviction under current law. Thus, we reverse the court's postjudgment order denying his resentencing petition and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

I.

THE GUILTY PLEA

At a preliminary hearing, evidence was introduced showing Lopez was with Salvador Burciaga and two other men the evening of July 28, 2008. All of them were members of Varrio Little Town, a criminal street gang. That evening, the four men drove around Costa Mesa looking for enemy gang members. They eventually stopped their car on a residential street claimed by other gangs. Burciaga exited the car carrying a shotgun and approached a group of people on a driveway. Burciaga asked the group where

---

[1] All undesignated statutory references are to the Penal Code.

2

they were from and then fired the gun, striking and injuring the victim. He then ran back to the car, which fled the scene.

On October 8, 2013, the prosecution filed an information (the information) charging Lopez with three counts: (1) attempted murder (former § 187, subd. (a) & § 664, subd. (b)); (2) street terrorism (former § 186.22, subd. (a)); and (3) aggravated assault (§ 245, subd. (a)(1)). Several enhancements were also alleged. That same day, Lopez pleaded guilty to all three counts and admitted the truth of the enhancements.

Lopez's plea form admitted the following facts: "[O]n July 28, 2008, I participated with three other members of Varrio Little [T]own to murder a human being. I took several but ineffective steps to murder the person. We used a shotgun to complete said murder. The victim was shot suffering severe injuries, but lived. I am a member and active participant of Varrio Little [T]own which has more than 3 members and commits [f]elony aggravated assault and felony vandalism as its primary activities. I committed the above felony at the direction of, in association with and for the specific benefit of Varrio Little [T]own. I committed the above felony with the specific intent to promote, further, and assist members of Varrio Little in committing the felony."

The court sentenced Lopez to a total of 20 years in state prison, consisting of nine years for the attempted murder count, one year for the assault count, and 10 years for a gun enhancement (former § 12022.53, subd. (b)). He was also given two years for the street terrorism count, which was stayed under section 654.

## II.

### THE RESENTENCING PETITION

In April 2023, Lopez filed a form resentencing petition under section 1172.6 (the petition) and was appointed counsel. In the petition, Lopez checked boxes stating that (1) a complaint or information was filed against him allowing "the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine," (2) he "accepted a plea offer in lieu of a trial at which [he] could have been convicted of . . . attempted murder," and (3) he "could not presently be convicted of . . . attempted murder because of changes made to Penal Code § 188 and 189." (See § 1172.6, subd. (a) [listing requirements for petitions under §1172.6].)

The court denied the petition on its face, finding Lopez was ineligible for relief as a matter of law. It explained, "his conviction and plea clearly indicate he was [directly] aiding and abetting the attempted murder and that remains a viable theory of liability" under current law.

Lopez appealed the denial of the petition. His counsel then filed a no-issue brief requesting that we independently review the record under *Delgadillo*. (*Delgadillo*, *supra*, 14 Cal.5th at pp. 231–232.) In January 2024, this Court issued an order granting Lopez 30 days to file a supplemental brief. The order stated his appeal could be dismissed as abandoned if he failed to do so. Lopez did not file anything in response. Nonetheless, we exercised our discretion to independently review the record. (See *ibid*.)

After conducting an initial review, on April 17, 2025, we issued another order inviting Lopez and the Attorney General's office "to file supplemental briefs addressing whether defendant's factual statement in the

4

felony plea form 'conclusively establishes every element' to sustain a conviction for the crime of attempted murder under current law."

We granted several extensions, and Lopez's counsel filed a supplemental brief on September 8, 2025, arguing Lopez's plea form did not establish all the elements of attempted murder. Specifically, he argued it did not conclusively show that Lopez took a direct but ineffectual act to accomplish the intended killing. The Attorney General's office did not file anything in response. We agree that Lopez's plea form does not conclusively establish that he is ineligible for relief under section 1172.6, so we reverse the trial court's order denying the petition.

DISCUSSION

I.

APPLICABLE LAW

"'[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense). [Citation.] A nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable." [Citation.] The accomplice need not actually foresee the nontarget offense.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 449 (*Curiel*).) For example, prior to 2019, "a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault. [Citation.] The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime." (*Ibid.*)

5

However, "[e]ffective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the . . . natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] In addition . . . Senate Bill 1437 added section 1170.95 [(now section 1172.6)], which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) Persons convicted of attempted murder may also seek relief under section 1172.6, subdivision (a).

To qualify for relief under section 1172.6, a convicted attempted murderer must file a petition declaring that "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of . . . attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner . . . accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3).)

The trial court reviews a section 1172.6 petition to determine whether the petitioner has made a prima facie case under the statute. If the petitioner has met this standard, the trial court must issue an order to show cause and then hold an evidentiary hearing to determine whether resentencing is warranted. (§ 1172.6, subd. (c) & (d); *People v. Lewis*, *supra*, 11 Cal.5th at p. 960.) But "[i]f the petition and record in the case establish *conclusively* that the defendant is ineligible for relief, the trial court may

6

dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708, italics added.)

Our Supreme Court has explained that "a petitioner who alleges that he or she could not currently be convicted of a homicide offense 'because of changes to Section 188 or 189 made effective January 1, 2019' [citation] puts at issue *all elements of the offense* under a valid theory." (*Curiel*, *supra*, 15 Cal.5th at p. 462, italics added.) Further, "[a]t the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record *conclusively establishes every element of the offense*. If only *one* element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of *other* elements." (*Id.* at p. 463, first italics added.)

"When the petitioner's conviction resulted from a guilty plea rather than a trial, [as is the case here,] the record of conviction includes the facts 'the defendant admitted as the factual basis for a guilty plea.' [Citations.] However, the court may only consider facts the defendant stipulated to as part of the factual basis or otherwise admitted as true. [Citation.] '[A]llowing inquiry into the historical facts that may appear in the court's files but that were never admitted by the petitioner as the factual basis for a plea . . . would . . . convert the prima facie inquiry into a factual contest.'" (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211–1212.)

"Attempted murder requires (1) a specific intent to kill and (2) a direct but ineffectual act toward accomplishing the intended killing. [Citation.] Unlike murder, an attempted murder therefore requires express

7

malice and cannot be proved based upon a showing of implied malice." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605.) The record shows Lopez was not the shooter. But the trial court found the record clearly showed he directly aided and abetted the attempted murder, which remains a viable theory under current law. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1252.)

To be guilty of attempted murder as a direct aider and abettor, "a person must 'aid[] the [direct] perpetrator by acts or encourage[] him [or her] by words or gestures.'" (*People v. Lee* (2003) 31 Cal.4th 613, 623.) Further, "the person must give such aid or encouragement 'with knowledge of the criminal purpose of the [direct] perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of,' the crime in question." (*Id*. at pp. 623–624) Put differently, "to be guilty of attempted murder as [a direct] aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill." (*Id*. at p. 624.)

II.

ANALYSIS

The petition meets the prima facie requirements under section 1172.6, subdivision (a)(1) through (3), and nothing in the record conclusively shows Lopez is ineligible for relief.

As to the first requirement, the information allowed the prosecution to proceed under a theory of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a)(1).) Specifically, the information alleged that Lopez "unlawfully, and with the

8

specific intent to kill, attempt[ed] to murder JANE DOE, a human being." The allegation that Lopez had "specific intent to kill" does not preclude him from relief because the information does not specify whether Lopez personally had this intent or whether it was based on an imputed theory.

Prior to Senate Bill No. 1437, an "intent to kill" could be imputed onto Lopez from the actual shooter if the "attempted murder was a natural and probable consequence of [Lopez's] intent to participate in the target offense." (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1008.) Besides attempted murder, Lopez was charged with aggravated assault, which could have served as a target offense. If Lopez was found to have directly aided and abetted the assault, the shooter's intent to kill could have been imputed onto him under the natural and probable consequences doctrine. (*Curiel*, *supra*, 15 Cal.5th at p. 449; *People v. Montes*, *supra*, 71 Cal.App.5th at p. 1008.)

As to the second requirement, Lopez accepted a plea offer in lieu of going to trial on the attempted murder charge. (§ 1172.6, subd. (a)(2).)

Finally, nothing in the record conclusively disproves Lopez's declaration in the petition that he could not be convicted of attempted murder today. (§ 1172.6, subd. (a)(3).)

To begin, attempted murder requires a finding that the defendant had "a specific intent to kill." (*People v. Mejia*, *supra*, 211 Cal.App.4th at p. 605.) As explained above, such an intent could have been imputed onto Lopez under the natural and probable consequences theory. Nothing in the record conclusively refutes this, including Lopez's factual admissions in his plea. Lopez admitted to "participat[ing] with three other members of Varrio Little [T]own to murder a human being. . . . The victim was shot suffering severe injuries, but lived." However, this conclusory statement does not specify the theory of attempted murder to which Lopez

9

admitted. For instance, he may have admitted to attempted "murder" because his attorney advised him that he could be found culpable under the natural and probable consequences doctrine.

Next, attempted murder requires "a *direct* but ineffectual act toward accomplishing the intended killing." (*People v. Mejia*, *supra*, 211 Cal.App.4th at p. 605, italics added.) To be culpable as a direct aider and abettor, Lopez had to "give aid or encouragement . . . with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing." (See *People v. Lee*, *supra*, 31 Cal.4th at pp. 623–624.) While Lopez admitted taking "several but ineffective steps to murder the person," he did not state that any such steps were *direct* acts. Nor did he identify any of the specific actions he took. If these steps were """mere preparation,""" which is possible based on his plea form, Lopez could not be found guilty of attempted murder. (See *People v. Garton* (2018) 4 Cal.5th 485, 510.)

While Lopez admitted that "[w]e used a shotgun to complete said murder," he was not the shooter, and this admission tells us nothing about his own actions. In particular, it does not indicate that he personally performed a direct act towards accomplishing the intended killing or that he gave any aid or encouragement to the shooter. He could not be convicted of attempted murder without any such actions. (See *People v. Lee*, *supra*, 31 Cal.4th at pp. 623–624; *People v. Mejia*, *supra*, 211 Cal.App.4th at p. 605.)

## DISPOSITION

The trial court's order denying the petition is reversed, and the matter is remanded for further proceedings under section 1172.6.


MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.

11